# A. C. CHOCK, LTD., A HAWAII CORPORATION *v.* FLOYD TOKUSEI KANESHIRO, JESSIE MITSUE KANESHIRO AND THE STATE OF HAWAII.

## No. 4769.

MARCH 12, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ.,
AND CIRCUIT JUDGE KING ASSIGNED BY
REASON OF VACANCY.

88

OPINION OF THE COURT BY ABE, J.

The State of Hawaii, as vendor, and Floyd Tokusei Kaneshiro and Jessie Mitsue Kaneshiro, as vendees, on March 30, 1965, entered into an agreement of sale of a residential lot in the Diamond Head subdivision. A covenant of this agreement required the vendees to construct a dwelling on the premises of a specified minimum value and within a specified period.

Subsequent thereto, plaintiff entered into a contract with vendees to construct a driveway leading to the premises. The proposed improvement was approved by the State. Plaintiff fully performed its contract; however, vendees failed to pay any portion of the contract price.

Plaintiff filed a notice of mechanic's lien and brought suit in the First Circuit Court to enforce its mechanic's lien.

The trial court dismissed the State on the ground that the State, and its interest in the land, were immune from the suit. Judgment was entered accordingly and plaintiff appealed.

It is conceded by the plaintiff and it is the law in this jurisdiction that a proceeding against property in which the State of Hawaii has an interest is a suit against the State and cannot be maintained without the consent of the State. *W. H. Greenwell, Ltd.* v. *Department of Land*

*and Natural Resources,* 50 Haw. 207, 436 P.2d 527 (1968) ; *Helela* v. *State of Hawaii,* 49 Haw. 365, 418 P.2d 482 (1966).

Plaintiff's contention is that R.L.H. 1955, § 193-41, provides that the interest of the vendor in the land is subject to the lien where a contract of sale requires the vendee to make improvement on the real property. From that premise plaintiff argues that when the State in the contract of sale required as one of the conditions that the vendees construct a residence of a specified sum on the land, the State's interest in the land became subject to the mechanic's lien.

It has been conceded by plaintiff and it is general principle of law that statutory laws of general application are not applicable to the State unless the legislature in the enactment of such laws made them explicitly applicable to the State. *United States* v. *Stevenson,* 215 U.S. 190 (1909) ; *Helela* v. *State of Hawaii,* 49 Haw. 365, 418 P.2d 482 (1966) ; *Marks* v. *Ah Nee,* 48 Haw. 92, 395 P.2d 620 (1964) ; *Hilo Meat Co.* v. *Antone,* 23 Haw. 675 (1917).

Plaintiff urges this court to adopt the ruling of the United States Supreme Court in the case of *Parden* v. *Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184 (1964), where the Court held that a citizen of Alabama may bring suit against the State of Alabama under the Federal Employer's Liability Act. The Court stated at page 192 :

"It remains the law that a State may not be sued by an individual without its consent. Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act. By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate

railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit."

Here the State of Hawaii under its laws developed, subdivided and sold a portion of its public land for a houselot. We cannot hold that where the State has acted under authority of law, it has agreed to waive its sovereign immunity. This case is distinguished from *Parden* v. *Terminal Railway, supra,* and we will not follow the ruling of that case.

Our legislature in recognition of the scarcity of available houselots authorized the Board of Land and Natural Resources to subdivide public lands and dispose of the same for personal residential purposes. Further, to discourage speculation the legislature provided that in all agreements of sale a provision be incorporated whereby a purchaser should be required to construct a dwelling of such size and value and within such time as may be prescribed by the board.[1]

We recognize the plight of the plaintiff in this case, and we are not deaf to its argument that the action of the trial court results in an injustice in that plaintiff, an innocent party, which has contributed labor and material to improve land owned by the State, is left without remedy.

Plaintiff has ingeniously argued before us that when the legislature enacted R.L.H. 1955, 1965 Supp., Chapter 103A, and authorized the Board of Land and Natural Resources to develop, subdivide and sell public land for personal residential purposes and required that every agreement of sale contain a provision requiring a "pur-

---

[1] R.L.H. 1955, 1965 Supp., § 103A-45(c).

chaser to construct a dwelling of such size and value and within such time as shall be prescribed by the board," the legislature committed the State to engage in the business of land developer and by doing so the State fell within the term of the word "vendor" as used in § 193-41 and thereby waived its sovereign immunity.

We cannot agree with plaintiff's contention. We believe that our legislature in enacting Chapter 103A did not intend to waive sovereign immunity on the part of the State nor authorize a mechanic's or materialman's lien on the State's interest in lands sold by the State under an agreement of sale. We hold that such general language cannot be construed as a waiver of sovereign immunity.

In *Marks* v. *Ah Nee*, 48 Haw. 92, 395 P.2d 620 (1964), where plaintiffs brought an action for partition naming the State of Hawaii as one of the defendants, alleging the State "claims or may claim some right or interest in some Hui Lands," we held that the trial court should have entered an order dismissing the State as a party defendant and at page 96 said:

"There can be no doubt that by chapter 337 power is conferred to proceed not only 'according to the usual practice of courts of equity in cases of partition' but also 'according to the provisions of this chapter in enlargement thereof.' R.L.H. 1955, § 337-1. The trying of a disputed title in a partition suit is an enlargement of the usual powers of courts of equity in such suits. *Rambo* v. *United States, supra,* 145 F.2d 670 (5th Cir.). As we have said, application against the State of this enlarged power is not justified by the principles set out in *State* v. *Tate, supra.* Accordingly, application against the State of this enlarged power would have to be based on express statutory consent thereto. Plaintiffs seek to find that consent in section 337-2, providing for joinder of every 'person' having any

estate or interest. Such general language cannot be construed as a waiver of sovereign immunity."

It appears that the legislature foreseeing problems of financing construction of improvements on state land either under a lease or sold under an agreement of sale enacted § 103A-21, wherein "rights of holder of security interest," whose security interest has been recorded with the Board of Land and Natural Resources are recognized and provisions are made for the protection of those interest or rights.

We find, contrary to plaintiff's argument, that mechanic's lien does not come within the meaning of the term "holder of record of any security interest" as used in § 103A-21. Section 103A-1, among other definitions, states "Holder of record having a security interest is a person who is the owner or possessor of a security interest in any land covered in Section 103A-21 and who has filed with the bureau of conveyances of the State and with the department a copy of such interest." As admitted by plaintiff, a mechanic's lien cannot be filed in the Bureau of Conveyances and therefore it is clear that the legislature did not intend to include such lien within the provisions of § 103A-21.

We also find that if the legislature intended to subject the interest of the State in land so disposed of under the provisions of Chapter 103A, it could have easily done so by specifying mechanic's and materialman's liens in § 103A-21, or by recognizing such liens in another section. Further, it is general rule that laws which contravene the sovereign rights are to be strictly construed. *United States* v. *Stevenson,* 215 U.S. 190 (1909) ; *Copper S.S. Co.* v. *State of Michigan,* 194 F.2d 465 (6th Cir. 1952) ; *McConnell* v. *City of Detroit, Mich.,* 98 F. Supp. 901 (1951).

Here, we are concerned with purely statutory remedy granted creditors and the only question before us is whether

our legislature authorized the imposition of a lien on public lands in favor of laborers and materialmen. Having found no statutory authorization it is not for this court to usurp legislative power and enter into the legislative field. *Pillsbury* v. *United Engineering Co.*, 342 U.S. 197 (1952); *State* v. *Moeller*, 50 Haw. 110, 433 P.2d 136 (1967); *Marks* v. *Waiahole Water Co.*, 36 Haw. 188 (1942); *People* v. *Olah*, 300 N.Y. 96, 89 N.E.2d 329 (1949).

Affirmed.

*Norman K. Chung* for plaintiff-appellant.

*T. S. Goo*, Deputy Attorney General (*Bert T. Kobayashi*, Attorney General, and *Francis M. Izumi*, Deputy Attorney General, with him on the brief), for defendant-appellee.

---

### DISSENTING OPINION OF KING, CIRCUIT JUDGE IN WHICH LEVINSON, J. CONCURS.

I would reverse the lower court. Admittedly under the circumstances of this case a private respondent would have no defense. The state relies upon a claim of sovereign immunity.

If the doctrine is applicable, a fair reading of the statute under which the state land in question was developed would find ample support for a waiver of immunity. The improvements for which a mechanics' and materialmen's lien is sought were constructed as part of a government requirement in connection with the sale of the land at public auction. The work was done in accordance with plans approved by the appropriate government authority. The development statute specifically grants priority to certain mortgages. I can see no essential difference between a mortgage lien for a bank's money and a mechanics' lien for a contractor's work and materials. A narrow reading of the statute produces an unfair result which is unnecessary.

But the extension of the doctrine of sovereign immunity to this type of situation is itself unnecessary. There is no magic in the phrase apart from its historical justification. To pay automatic homage to this abracadabra whenever the state is an unwilling party to a legal action is to abandon reason for obeisance.

Sovereign immunity as a principle of the common law should be limited to actions which could threaten the operation of the government and should not be a shield behind which the government can engage in conduct which it forbids to its own citizens.