**Electronically Filed
Supreme Court
SCPW-22-0000607
17-NOV-2022
09:19 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SCOTT DAVID DEANGELO, Petitioner,

vs.

THE HONORABLE KEVIN A. SOUZA,
Judge of the Circuit Court of the First Circuit,
State of Hawai'i, Respondent Judge.

and

STATE OF HAWAI'I, Respondent.

SCPW-22-0000607

ORIGINAL PROCEEDING
(CASE NO. 1CPC-22-0000231)

NOVEMBER 17, 2022

RECKTENWALD, C.J., NAKAYAMA, MCKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

This petition for an extraordinary writ challenges the constitutionality of Hawai'i Rules of Penal Procedure (HRPP) Rule 12(g).

Rule 12(g) allows a judge who dismisses a case based on a "defect in the institution of the prosecution or in the charge" to order the defendant held for a "specified time" while the State re-files charges. Up until recently, courts have rarely invoked Rule 12(g). But the present wave of dismissals in cases where the State did not obtain an indictment from a grand jury has prompted a surge in the rule's use.

Scott Deangelo is the defendant in one such case. After the court dismissed charges against him, it ordered under Rule 12(g) that Deangelo remain in custody for 90 days, while the State sought a grand jury indictment. Deangelo argues that Rule 12(g) violates the Fourth Amendment of the United States Constitution, which protects against unreasonable seizures, and Hawai'i Revised Statutes (HRS) § 803-9(5) (Supp. 2021), which requires an "arrested person" to be taken "before a qualified magistrate for examination" within 48 hours of arrest. While Deangelo's case has been mooted by his indictment eleven days later, his challenge to Rule 12(g) presents an issue of public importance.

We hold that, when probable cause has been found after a preliminary hearing but the case is dismissed without prejudice due to a defect in the institution of the prosecution, Rule 12(g) permits a court to hold a defendant in custody or continue

2

bail for a specified time that is reasonable under the circumstances.

## I.

The police arrested Defendant-Petitioner Scott Deangelo without a warrant on February 8, 2022 for second-degree murder. The next day, the district court made a judicial determination of probable cause for the extended restraint of liberty and set bail at $500,000. On February 17, the court confirmed its probable cause and bail findings. After a two-day preliminary hearing on February 25, a different district court judge found probable cause to believe that Deangelo committed the charged felonies and sent the case to circuit court.

On March 10, Deangelo was arraigned without a grand jury indictment. The circuit court confirmed bail at $500,000. In response to the State's motion to either hold Deangelo without bail or increase bail, the circuit court ordered on June 6 that Deangelo be held without bail. The court based its order on the seriousness of Deangelo's charged crimes and its finding that Deangelo posed a danger to the community and was a flight risk.

On August 25, Deangelo moved to dismiss the case because he had not been indicted in accordance with HRS § 801-1 (2014). See State v. Obrero, 151 Hawai'i 472, 517 P.3d 755 (2022). The State conceded the motion, but requested that the court dismiss

the case without prejudice.  Citing Rule 12(g), the State also asked the court to hold Deangelo in custody without bail.

On October 10, the circuit court dismissed Deangelo's case without prejudice and denied all pending motions as moot.  But under HRPP Rule 12(g), the court ordered that Deangelo remain in custody without bail for 90 days.  In the order, the circuit court made detailed factual findings.  These findings reviewed the impact of Covid-19 on grand jury proceedings over the past two and a half years.  The court observed that for fourteen of the last thirty months, grand juries were unavailable in the First Circuit.  The court pointed out that when the State charged Deangelo via complaint, grand jury proceedings were not taking place in the First Circuit.  In light of this, the court's previous no-bail finding, and based on "the offenses alleged, the possible punishment upon conviction, Defendant's financial ability to afford bail, the serious risk that Defendant will flee, and the serious risk that Defendant poses a danger to any person or the community," the court decided to hold Deangelo in custody.

By October 16, Deangelo had not yet been indicted.  He filed a petition for an extraordinary writ to this court.  His continued custody under 12(g) violated the Hawai'i and United States Constitutions, as well as HRS § 803-9(5), he argued.  Deangelo wanted to be released.

4

Five days later, on October 21, a grand jury indicted Deangelo on three counts — murder in the second degree, place to keep a pistol or revolver, and place to keep ammunition. Eleven days had elapsed since the case's dismissal.

The parties disagree on whether Deangelo's indictment has mooted the court's 12(g) order holding him in custody for up to 90 days. But both urge us to review the broader issue of Rule 12(g)'s validity, since it is an issue of public interest that may repeat while evading meaningful judicial review. See Moana v. Wong, 141 Hawaiʻi 100, 115, 405 P.3d 536, 551 (2017). Because we agree that the 12(g) issue should be resolved promptly, we assume the mootness of the order holding Deangelo but go on to the merits of Deangelo's statutory and constitutional challenges to Rule 12(g) itself.

HRPP Rule 12(g)[1] reads:

> If the court grants a motion based on a defect in the institution of the prosecution or in the charge, it may also order that the defendant be held in custody or that the defendant's bail be continued for a specified time pending the filing of a new charge. Nothing in this rule shall be deemed to affect provisions of any statute relating to periods of limitations.

---

[1] The rule, formerly known as Rule 12(b)(5), is a slightly modified version of Federal R. Crim. P. 12(g). The federal rule provides:

> If the court grants a motion to dismiss based on a defect in instituting the prosecution, in the indictment, or in the information, it may order the defendant to be released or detained under 18 U.S.C. § 3142 for a specified time until a new indictment or information is filed. This rule does not affect any federal statutory period of limitations.

5

Deangelo contends that Rule 12(g), on its face and as applied to him, violates HRS § 803-9(5) and the Fourth Amendment of the United States Constitution.[2]

Deangelo argues that when the court dismissed his case, all proceedings against him terminated, including the prior judicial determination of probable cause to hold him. So he was like a person arrested without a warrant. And this person has rights. First, they have a statutory right under HRS § 803-9(5) to be charged or brought before a district court judge for a probable cause determination within 48 hours. Second, they have a Fourth Amendment and Hawaiʻi constitutional right to a probable cause finding made before arrest or promptly after it, where promptly means within 48 hours. Gerstein v. Pugh, 420 U.S. 103, 126 (1975); County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); Constitution of the State of Hawaiʻi article I, section 7. By empowering judges to hold people in custody after dismissal for a specified period of time, Deangelo argues that Rule 12(g) on its face violates both HRS § 803-9(5) and his constitutional rights against unreasonable seizure. Since a court rule cannot abridge substantive rights, Rule 12(g) "must be stricken," or if upheld, must be capped at 48 hours.

---

[2] Deangelo mentions article I, section 7 of the Hawaiʻi Constitution, saying if there's a Fourth Amendment violation, then there's an article I, section 7 violation. But Deangelo presents no arguments specific to our constitution's Fourth Amendment analogue.

Not so, says the State.  It argues that a person against whom a judicial determination of probable cause has already been made is not in the same position as a person who has just been arrested without that finding.  The plain language of HRS § 803-9(5) governs only a person's "initial appearance" in court after an arrest and has no relevance whatsoever to Rule 12(g).  As to Deangelo's constitutional claims, the State maintains that all required constitutional procedures were followed — probable cause to hold Deangelo was found within 48 hours and confirmed after a preliminary hearing.

## II.

The equivalent of Rule 12(g) has existed in federal law since 1944 and as of today has been adopted by at least 26 states.  The rule also has roots in the common law.  See Latson v. State, 146 A.2d 597, 600 (Del. 1958) (observing that the rule "embod[ies] the practice theretofore existing that on the dismissal of an indictment the defendant is not automatically entitled to discharge, and the court *may* hold him in custody.") Yet, courts seldom invoke 12(g).  See U.S. v. Powers, 168 F.3d 943, 949 (7th Cir. 1999) (commenting on the "dearth of reported cases").

In Dawson v. Lanham, we suggested in passing that the trial court should have used this rule to hold the defendants in custody after the court dismissed their indictment.  53 Haw. 76,

83, 488 P.2d 329, 334 (1971). In his dissent, Justice Abe pointed out that Rule 12(g) is valid only to the extent that it does not abridge substantive rights, a question that the Dawson Court did not consider. Id. at 87 n.4, 488 P.2d at 336 n.4.

Fifty years later, we take up this question.

The Fourth Amendment protects against "unreasonable . . . seizures." U.S. Const. Am. IV. It "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein, 420 U.S. at 114. That judicial determination, if made after arrest, must be made promptly. Id. at 125-26. The Supreme Court has held that determinations made within 48 hours of arrest will generally satisfy this requirement. McLaughlin, 500 U.S. at 56. HRS § 803-9(5) codifies this rule in Hawaiʻi law. Failure to promptly determine probable cause or a defect in the probable cause determination itself may render any subsequent custody unreasonable. See Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 918-19 (2017) (holding that probable cause obtained based on false police statements renders a seizure unreasonable.)

Here, no one disputes that sufficient probable cause to arrest and hold Deangelo was found. Also, through a preliminary hearing a judge determined that probable cause existed to believe Deangelo had committed the dismissed charges. The constitutional question turns, then, on whether there was *still*

probable cause to hold Deangelo after the court dismissed his case.

Typically, a dismissal ends the court proceedings, leaving "nothing further to be accomplished." State v. Kalani, 87 Hawai'i 260, 261, 953 P.2d 1358, 1359 (1998). And we have said that after dismissal "even if the prosecution is allowed to recharge the defendant, recharging [them] does not revive the original case." Id. at 262, 953 P.2d at 1360. In Kalani, however, we considered whether a dismissal without prejudice constituted a final order for the purpose of appeal. Kalani did not involve a Rule 12(g) order.

Rule 12(g) creates a limited exception to the procedure that a dismissal completely terminates the original case. If the court grants a dismissal based on "a defect in the institution of the prosecution or in the charge," the rule allows the judge to hold the defendant in custody (or continue bail) while the State re-charges. In effect, dismissal paired with a 12(g) grant resets the proceedings to where they were before the defective charge or indictment was made. In Deangelo's case, that means after a preliminary hearing at which the court found probable cause.

A "[p]reliminary hearing is for the purpose of determining whether there is probable cause to warrant holding the accused for action by the grand jury." Engstrom v. Naauao, 51 Haw. 318,

320, 459 P.2d 376, 377 (1969); see also State v. Tominaga, 45 Haw. 604, 609, 372 P.2d 356, 359 (1962) ("The only purpose of a preliminary hearing is to determine whether there is sufficient evidence against an accused to warrant his being held for action by a grand jury." (citations omitted)).  Because grand juries may take time to convene, the preliminary hearing helps ensure that a defendant is not unreasonably held before indictment.

Within this framework, a rule like 12(g) does not offend the Fourth Amendment, article I, section 7, or HRS § 803-9(5), which duplicates the holding of McLaughlin.  We stress that 12(g) is a procedural rule, limited to defects in the charging process.  The rule cannot abridge a substantive right.  HRS § 602-11 (2016).  If, as in City of Joliet, it were discovered that police had sworn false statements in order to obtain a probable cause determination, the seizure would be unreasonable. In that case, custody could not continue without violating the Fourth Amendment and article I, section 7, and Rule 12(g) could not change that.

No such defect in probable cause occurred here.  The State charged Deangelo via complaint and a preliminary hearing was conducted before our clarification that prosecutions based on complaint and preliminary hearing alone are unlawful under HRS § 801-1.  See Obrero, 151 Hawai'i 472, 517 P.3d 755.  By dismissing the case, the circuit court addressed this defect in

the institution of the prosecution; by invoking Rule 12(g) the court ensured that a defendant it believed to be a danger to the public and a flight risk would remain in custody while the State sought a grand jury indictment. Custody under these circumstances abridges no substantive right.[3]

From the question of whether Rule 12(g) is constitutional, we turn to the question of how long a court may hold a defendant under the Rule.

The plain text of 12(g) does not specify how long a defendant can be held in custody, only that the time be "specified." Several states that have adopted this rule have embedded specific time limits, ranging from one day to 60 days.[4]

Other states have made explicit that the specified time must be reasonable.[5]

Still others have decided that when a prosecution is dismissed, the defendant must be released.[6]

---

[3] The length of custody authorized under 12(g) may not, for example, abridge a defendant's right to a speedy trial.

[4] See Kan. Stat. Ann. § 22-3208(6) (custody limited to one day after dismissal); Wyo. R. Prac. & P. 12(i) (48 hours); Wis. Stat. § 971.31(6) (72 hours); Md. Crim. Causes. 4-252(h)(1) (ten days if the crime charged is a crime of violence, otherwise immediate discharge); Ohio Crim. R. 12(j) (fourteen days); Iowa R.2.11(7) (20 days); Ky. R. Crim. P. RCr 8.24(2) (within 60 days or until the discharge of the next grand jury assembled, whichever is sooner).

[5] See Utah R. Crim. P. 12(h); Ala. R. Crim. P. 15.5(a); Fla. R. Crim. P. R. 3.190(e).

[6] See Ariz. R. Crim. P. 16.4(e); Me. R. Crim. P. 12(5); Mont. Code Ann. § 46-13-402.

No court, federal or state, has interpreted the "specified time" language to mandate a fixed maximum time in all cases. See, e.g., Esguerra v. State, No. A-8395, 2005 WL 19220, at *3 (Alaska Ct. App. Jan. 5, 2005) ("[T]he time which the State can hold the defendant before reindicting him must be specified, but is not limited to ten days."); Powers, 168 F.3d at 948 (declining to rule on what a "specified time" constitutes, but noting that such an extension potentially "cannot in itself affect the speedy trial clock"); U.S. v. Silverman, 129 F. Supp. 496, 514 (D. Conn. 1955) (continuing bail for 21 days under the federal equivalent to 12(g) without discussion).

The rule does not contemplate a universal time limit and setting one would undermine the trial court's ability to tailor its order to the circumstances. We hold only that the time specified must be reasonable in light of all the circumstances. Relevant circumstances may include the status of the case (is the case at the discovery and pretrial motions stage or is trial imminent?), the unprecedented exigencies of the Covid-19 pandemic, the inability of the State to convene grand juries during a particular time, the nature and seriousness of the defendant's alleged crime(s), the extent to which the defendant

12

poses a flight risk and a danger to the community, and the defendant's ability to afford bail.[7]

The circuit court properly looked to these factors. Since the State indicted Deangelo before the 12(g) order expired, we do not find it necessary to determine whether the circuit court abused its discretion in specifying 90 days.

However, we emphasize that no state that has specified a deadline to recharge under 12(g) has allowed custody to stretch beyond 60 days and that most have settled on a far lower number. We do not foresee any circumstances that will justify custody longer than 60 days under a 12(g) order. In Deangelo's case, despite the grand jury postponements identified by the circuit court, the State was able to secure an indictment within eleven days. We expect that this time will continue to decrease as defendants are lawfully charged.

Jon N. Ikenaga
for petitioner

Anna Ishikawa
(Loren J. Thomas and
Steven S. Tsushima on the
briefs)
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins



---

[7]     While Rule 12(g) gives the court the option of holding the defendant in custody or continuing bail, the court must support either determination with findings of fact that comply with HRS Chapter 804.